UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PATRICIA CUNNINGHAM,

    Plaintiff,

v.       Case No. 2:20-cv-913-SPC-NPM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Patricia Cunningham seeks judicial review of a denial of Social Security disability benefits. The commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 23),[1] and the parties filed a joint memorandum (Doc. 25). As discussed in this report, the decision of the commissioner should be affirmed.

**I.**      **Eligibility for Disability Benefits and the Administration's Decision**

    **A.**      **Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

B.     **Factual and procedural history**

On July 5, 2018, Cunningham applied for disability insurance benefits and supplemental security income benefits. (Tr. 87). Cunningham alleged an onset date of January 1, 2015. (Tr. 112, 136). Cunningham's applications were administratively denied initially on October 15, 2018, and upon reconsideration on December 21, 2018. (Tr. 87, 203, 213). As of the alleged onset date, Cunningham was 52 years old,

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

and she had completed some college. Her past work included jobs as an administrative assistant and bookkeeper (Tr. 126), and she currently works one eight-hour day per week as office support staff at a financial advising firm. (Tr. 91, 94, 113, 136, 163).

At Cunningham's request, Administrative Law Judge ("ALJ") Raymond Rogers held a hearing on March 9, 2020, concerning the denial of disability insurance benefits and supplemental security income benefits. (Tr. 108-134). ALJ Rogers issued a decision on March 27, 2020, finding Cunningham not disabled from her alleged onset date of January 1, 2015, through the date of decision. (Tr. 84-101).

Cunningham's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Cunningham then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform

    other work that exists in "significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

  The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

  Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion

throughout the process. *See* 20 C.F.R. §§ 416.912, 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish the existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

In this matter, the ALJ found Cunningham meets the insured status requirements through December 31, 2023. (Tr. 91). At step one of the evaluation, the ALJ found Cunningham had engaged in substantial gainful activity from January 2015 through December 2016. (Tr. 91). At step two, the ALJ characterized Cunningham's severe impairments as: diabetes; obesity; anxiety; and depression. (Tr. 91). At step three, the ALJ determined Cunningham did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 91-93).

> As a predicate to step four, the ALJ arrived at the following RFC:
>
> The claimant has the residual functional capacity to: lift/carry 50 pounds occasionally and 25 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; no operation of foot controls; occasional climbing of ramps or stairs, but may never climb ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling as defined by the SCO code; no

5

> exposure to hazardous machinery or unprotected heights; able to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; able to deal with problems involving a few concrete variables in or from standardized situations; low stress work defined as only occasional decision-making and only occasional changes in the work setting; frequent interaction with coworkers and supervisors; and occasional interaction with the public.

(Tr. 94).

Consequently, the ALJ determined Cunningham is unable to perform her past relevant work. (Tr. 99). At step five, the ALJ found Cunningham could perform other work that exists in significant numbers in the national economy. In support, a vocational expert testified three occupations represent the kinds of jobs an individual with Cunningham's age, education, work experience, and RFC can perform:

- hand packager (DOT 920.587-018, medium, SVP 2, 60,000 jobs nationally);
- salvage laborer (DOT 929.687-022, medium, SVP 2, 80,000 jobs nationally); and
- conveyor feeder (DOT 921.686-014, medium, SVP 2, 80,000 jobs nationally).[5]

(Tr. 100).[6]

---

[5] Note that the vocational expert's testimony and the ALJ's decision contain a scrivener's error for the occupation of conveyer feeder. (Tr. 100, 130). Here, both the vocational expert and the ALJ listed DOT § 921.687-014 (choke setter). However, both described the occupation as "conveyer feeder" and specified its physical exertion level as medium. Thus, it appears that all understood the occupation to be DOT § 921.68**6**-014 (conveyer feeder) not DOT § 921.68**7**-014 (choke setter).

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill

## II. Analysis

Cunningham's appeal presents the following questions for review:

1. whether the ALJ properly evaluated the opinions of state agency physicians;

2. whether the ALJ discharged his duty to resolve any apparent inconsistencies between the vocational expert testimony and the dictionary of occupational titles; and

3. whether there is a significant number of jobs in the national economy that Cunningham could perform.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020)

---

categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

(quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (citation omitted).

### B.     Whether the ALJ properly evaluated the opinions of state agency physicians

Cunningham argues the ALJ's decision is unsupported by substantial evidence because, having credited the prior administrative medical findings of the state agency,[7] non-examining, psychiatric consultants, the ALJ, without explanation, failed to include certain limitations identified by these consultants in the RFC assessment. (Doc. 25, p. 10).

The RFC is the most a claimant can still do in a work setting despite her

---

[7] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a).

limitations. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(1). And in rendering Cunningham's RFC, the ALJ was not required to defer to any prior administrative medical finding. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The assessment of a claimant's RFC is reserved for the commissioner, and at the hearing level, the ALJ is exclusively responsible for formulating the claimant's RFC after an evaluation of the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c).

When formulating Cunningham's RFC, the ALJ was not persuaded by the state agency psychiatric consultants who noted that Cunningham may need some support with planning and goal setting. (Tr. 98, 177, 193, 527). The ALJ found these opinions inconsistent with Cunningham's treatment records, which reflect that she can follow directions and instructions, and that she is able to learn from prior experiences. (Tr. 98, 145, 159, 176, 202, 206, 212, 219, 404, 411, 860, 877). Additionally, the ALJ decided that the state agency psychiatric consultants' findings are inconsistent with Cunningham's work history, which demonstrates she can work an eight-hour day and earn close to SGA levels. (Tr. 98, 141, 142, 145, 219, 378-360, 366, 491).

Overall, the treatment records demonstrate Cunningham had normal concentration and memory and a coherent, logical process. For example, during 2018, Cunningham's medical providers repeatedly noted that she presented with a

good mood, was alert and oriented, and showed no depression, anxiety, or memory loss. (Doc. 20, p. 20 (citing Tr. 746)). On August 28, 2018, Cunningham advised ARNP Jagodzinski that she was not interested in medication adjustments for her depression at the time because her issues were situational. (Tr. 792). On examination, Cunningham's thought process was coherent, logical, and goal directed. (Tr. 790). And subsequent mental status examinations from Cunningham's outpatient therapy sessions showed that she was alert and oriented and had a cooperative attitude, displayed normal speech and psychomotor activity, and exhibited coherent and logical thought. (Tr. 838, 840, 842, 844). Furthermore, Ms. Wolfson, a licensed clinical social worker, conducted a mental status examination of Cunningham on March 6, 2019, during which she had an unremarkable mood, appropriate affect, normal speech, intact orientation and memory, normal concentration, and good insight and judgment. (Tr. 863).

However, the ALJ was persuaded by the state agency psychiatric consultants' findings that Cunningham has no more than moderate limitations in any of the four areas of broad mental functioning. (Tr. 98, 135-162, 165-196). Here, the ALJ decided that the state agency psychiatric consultants' opinions are supported by mental status examinations which have not shown significant memory and cognitive impairments. (Tr. 98, 830-848, 849-867). Additionally, the ALJ decided that these opinions are consistent with Cunningham's treatment records, which do not reflect

any recent history of psychiatric hospitalizations or inpatient psychiatric treatment. (Tr. 98, 141-142, 155-156, 159, 171, 381-386, 425-426, 440-443, 482, 484).

When making his findings, the ALJ is not required to address every limitation identified by a medical source. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Indeed, the governing regulations require only source-level articulation, that is, the ALJ must indicate how persuasive he finds a source's opinion overall. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Nor was the ALJ required to discuss and evaluate each aspect of the prior administrative findings; under the regulations, the ALJ is permitted to articulate consideration of multiple opinions or findings in a single analysis. *See* 20 C.F.R. § 416.920c(b)(1).

Regardless, Cunningham's RFC accounts for her mental impairments by limiting her to work where she can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to work where she is able to deal with problems involving a few concrete variables in or from standardized situations. (Tr. 99). Further, the RFC limits her to low stress work, defined as work with only occasional decision-making, only occasional changes in the work setting, work with frequent interaction with coworkers and supervisors, and only occasional interaction with the public. (Tr. 99).

Therefore, Cunningham has failed to demonstrate error. And on review of the ALJ's decision, substantial evidence supports the ALJ's formulation of

Cunningham's RFC.

### C. Whether the ALJ discharged his duty to resolve any apparent inconsistencies between the vocational expert testimony and the dictionary of occupational titles

Cunningham argues the ALJ failed to resolve an apparent conflict between the RFC and two of the three representative occupations the vocational expert found Cunningham could perform: conveyer feeder and salvage laborer. (Doc. 25, p. 26). The first purported conflict concerns the exertion level associated with the occupation of conveyor feeder. Cunningham argues that while the vocational expert was asked to supply representative occupations with a medium exertional level, the occupation of conveyor feeder has a heavy exertion level. The second purported conflict concerns the frequency of stooping related to the occupations of conveyor feeder and salvage laborer. The ALJ limited Cunningham to occasional stooping, and she argues both occupations require frequent stooping.

In *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018), the Eleventh Circuit held that ALJs "have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the [Dictionary of Occupational Titles ("DOT")] and resolve them." If any apparent conflict exists, the ALJ must do more than simply ask the vocational expert whether her testimony is consistent with the DOT—the ALJ must "offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict." *Id*. The

failure to do so "means that the ALJ's decision, when based on the contradicted [vocational expert] testimony, is not supported by substantial evidence." *Id.*

The issue here is whether an "apparent conflict" existed to trigger this duty. An "apparent conflict" means "a conflict that is reasonably ascertainable or evident from a review of the DOT and the [vocational expert's] testimony … even if, after further investigation" it turns out there was no discrepancy. *Id.* at 1365.

Here, the ALJ posed a hypothetical question to the vocational expert reflecting Cunningham's RFC, which included a limitation to medium work and occasional stooping. (Tr. 126-127). In response, the vocational expert testified that a person with Cunningham's limitations and vocational profile could perform the occupations of conveyer feeder, salvage laborer, and hand packager. (Tr. 127-130).[8]

However, the vocational expert's testimony and ALJ decision contain a scrivener's error. (Tr. 100, 130; *see supra* n. 5). For the occupation of conveyor feeder the vocational expert and the ALJ listed DOT § 921.68*7*-014, which corresponds to the occupation of choke setter. But because the vocational expert and the ALJ described the occupation as conveyer feeder and specified its physical exertional level as medium, it appears that all understood this job to be DOT § 921.68*6*-014: conveyer feeder. Therefore, Cunningham's argument that the DOT

---

[8] Cunningham does not suggest any apparent conflict between the RFC and the occupation of hand packager.

13

description for conveyer feeder is inconsistent with the RFC because it is heavy work with frequent stooping is erroneous. Using the correct DOT number for conveyer feeder, there is no conflict between the DOT description of conveyer feeder and the RFC. (*Compare* DOT § 921.687-014, *with* DOT § 921.686-014).

As for the conflict between the RFC and the requirement of frequent stooping related to the occupation of salvage laborer, any error concerning the ALJ's failure to resolve this conflict is harmless. "[T]he Social Security Act and its regulations 'do not mandate a precise count of job numbers.'" *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1284 (11th Cir. 2020) (internal citations omitted). And with the aid of a vocational expert's testimony, the regulations require the ALJ to identify a significant number of jobs available in at least ***one*** occupation. *See* 20 C.F.R. § 404.1566(b) (requiring "a significant number of jobs (in one or more occupations)"); *see also Bellamy v. Comm'r of Soc. Sec.*, 734 F. App'x 735, 738 (11th Cir. 2018) (declining to address whether other occupations conflicted with the DOT because the vocational expert's testimony supported that the claimant could at least perform one occupation that was available in significant numbers). Therefore, substantial evidence supports the ALJ's finding that there is a significant number of occupations Cunningham can perform based on the hand packager and conveyer feeder occupations alone (with a combined total of 140,000 jobs nationally). *See Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (finding any error from

14

an apparent conflict between the RFC and two positions identified by the vocational expert harmless because the remaining job that plaintiff was capable of performing existed in sufficient numbers); *see also*, *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987) (concluding 80,000 jobs in national economy constituted a significant number of jobs); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (concluding an aggregate of four occupations totaling 23,800 jobs nationally was a significant number).

In sum, there was no apparent conflict for the ALJ to resolve concerning the occupations of conveyer feeder and hand packer, and any failure to resolve a conflict related to the occupation of salvage laborer was harmless.

> **D. Whether there is a significant number of jobs in the national economy that Cunningham could perform**

Cunningham argues the commissioner did not meet his step-five burden of showing that there is a sufficient number of jobs in the national economy that someone with Cunningham's medical and vocational profile can perform because the job numbers for the representative occupations that the vocational expert provided do not differentiate between full- and part-time jobs. (Doc. 25, p. 33).

Although the Eleventh Circuit has not squarely addressed this issue, other circuits have held the vocational expert does not need to opine about the ratio of full-

and part-time jobs within an occupation or exclude part-time jobs from the numbers.[9] Indeed, the applicable regulations acknowledge that part-time work can constitute substantial gainful activity. *See* 20 C.F.R. §§ 404.1572(a) ("Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."); 416.972(a) (same)).

Moreover, the relevant inquiry on this issue is not whether substantial evidence supports the vocational expert's testimony, but whether the vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. *See Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019). A vocational expert's testimony can constitute substantial evidence without delving into the underlying data. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). And on appeal, Cunningham does not question the qualifications or expertise of the

---

[9] *See, e.g.*, *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 450 n.6 (2nd Cir. 2012) (declining "to create a *per se* rule prohibiting an ALJ from considering part-time positions" and rejecting the plaintiff's argument "that the ALJ erred by allowing the VE to provide employment numbers that might have included part-time positions"); *Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010) ("The vocational expert was neither required to articulate the percentage of available jobs that were part-time or full-time, nor to describe labor market conditions beyond the data that were readily available."); *Liskowitz v. Astrue,* 559 F.3d 736, 745 (7th Cir.2009) (holding that a vocational expert may testify as to the number of jobs available without specifically identifying the percentage of jobs that are part-time and such testimony provides substantial evidence to support the ALJ's step-five finding).

16

vocational expert. Thus, the vocational expert's ultimate opinion about available work in the economy, supported by the representative occupations, provides substantial evidence in support of the ALJ's step-five finding. *See Olney v. Comm'r of Soc. Sec.*, 2018 WL 4760799, *14 (M.D. Fla. July 30, 2018) ("[A]lthough the job number data presented by Plaintiff could support an alternative finding, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one …. Therefore, the Court recommends substantial evidence supports the ALJ's reliance on the VE to conclude that a substantial number of jobs exist in the national economy that Plaintiff could perform.") (citations omitted).

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

It is **RESPECTFULLY RECOMMENDED** the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in defendant's favor.

Reported in Fort Myers, Florida, on February 9, 2022.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**